May it please the Court, Adam Steinmetz on behalf of the claimant appellant, Mr. Terrence Mackey. Your Honors, the statutory language at issue here is a service-connected disability rated as total. It's in a special monthly compensation in 1114 S. Mr. Mackey has a rating of total disability based on individual unemployability. He is in the eyes of the VA a totally disabled veteran. He is exactly the type of veteran who should benefit from the special monthly compensation statute. But the Board, the Veterans Court, and the Secretary all say he has the wrong kind of TDIU. Well, and the statute, Congress says in 1114 S that it's a service-connected disability rated as total. Correct. So doesn't this, why does this case not begin and end with the statutory text? The statutory language says a service-connected disability rated as total. It's A and disability. That's correct, Your Honor. The TDIU context, however, is applied in only situations when a veteran does not have a service-connected disability rated as total. That's why the TDIU exists. So if a veteran had a total disability rating of 100 percent, the veteran would not need a TDIU at all because he would already be compensated at the 1114 J level, that's total. The fact is the Veterans Court has held and it's settled law, it's not up for an appeal. The Veterans Court has held that a TDIU can satisfy a service-connected disability rated as total. It can be, it can stand in the face of one disability that is totally disabling, not under the schedule, but under TDIU. So I think that that's the position that the Secretary is taking. I mean, I understand your position and maybe Congress needs to change this, but 1114 is not just the part you read, but then it goes on and it uses the words, because you have to have additional stuff for special events like compensation, and it makes a specific distinction between additional service-connected disability or disabilities. So it recognizes that you can have multiple disabilities to add up to things. And so when it's using a service-connected disability in that first part, I would assume it's using it in the singular, just like it is in the second part of that sentence. That's correct, Your Honor. And I think that's the decision that the Guerra Court came to as well. That was a panel majority decision from, I think, 2011. This is the case of Guerra that the Secretary relies on extensively. Now we would argue as an alternative argument, if Your Honors are not, would not be willing to consider our argument that the TDIU itself stands in the place. It doesn't, the TDIU is not, let me answer that part first. Well, here's your, the problem for me is TDIU is not a disability. Correct. It's a rating. Yes. It's a rating based upon one or more disabilities. Well, let me just, let me just take issue with that because it is a rating based on a, in a determination by the VA that the veteran is unemployable based on one or more disabilities. So no, but, but the point that I'm making. The disability picture is still one or multiple ones for TDIU and if 1114S requires one disability rated as total, I mean, I'm a little curious as to why VA actually gives you this for a one disability rated as total for TDIU. I think they would be within their rights not to do it because there's no disability rated as total, but they've read this in a logical pro-veteran way to say if you have one disability that justifies a total rating, even if it's scheduled or does not, then you get this. But so we want them to go further and say, well, it doesn't matter if it's one disability that gets you TDIU, it does, it can be eight different disabilities that get you TDIU. Right. And the reason, your honor, is because exactly what your honor said is that they would have been fully in their rights to say that no TDIU is ever based on a single disability rated as total. A TDIU does not re-rate, for example, a 60% arthritis rating. It doesn't turn that into 100% arthritis. It's still a 60% rating that then determines unemployability. And so our argument- The total rating. Sorry? I mean, I see- It's compensated as a total rating. I think they could have interpreted it one way. They probably would have lost with us, given the way we tend to do things. It is one disability that gets a total rating under TDIU versus schedule. You're still talking about, in those cases where they allow it on TDIU, one disability. You want us to extend it to multiple disabilities, which seems in conflict with the plain language of 1114S. So I will answer that quickly, and then I'm going to move on to my alternative argument because I want to make sure that we cover that as well. Your honor, the TDIU rating, we call it TDIU, total disability based on individual unemployability. The language of the regulation is total disability ratings for compensation may be assigned where the scheduler rating is less than total. And so I agree, your honor, that there's no reason why the VA had to ever award it in a TDIU context, but the Veterans Court in Bradley said that a TDIU does qualify. And our position is simply, if some TDIUs qualify, there is no logical coherence to the position that some should and some shouldn't. That's taking my argument a bit too far because the logical coherence is that you have one disability that warrants a total rating under TDIU. So it's still one disability. And my answer would be that it's not a disability rated as total, it's a disability compensated at a total rating. Let me just move on to the alternative argument, however, because I think that if your honors are not willing to consider a TDIU as, let's say, a proxy, and unemployability stands in for all of the underlying disabilities, it is one thing, then our alternative argument is that this court has weighed in on the language, a service-connected disability. It weighed in in one case. It's the Guerra case. It was a panel majority decision, 2-1, based on Chevron deference. The court explicitly found, precisely because of what your honor has pointed to, that it uses a disability the first time and then later disability or disabilities. The panel majority, Judge Bryson writing for the majority, found that the language was ambiguous and relied entirely on Chevron deference. Sure, but here's your problem on that. After Loper-Bright, we look at ambiguity in a different way. And so we don't have to, Guerra clearly is not binding on us if we agree that this is not, well, let me take that back, because I don't want to get into the retroactivity of Loper-Bright. But let's just assume that it's not binding on us. We still would look at this, and we're not bound by its notion that this is ambiguous. That's correct, your honor. We could find that this is plain in the way our conversation just had. And so Guerra doesn't help you or hurt you. Well, we would argue, your honors, that at best the language is ambiguous. I mean, Judge Gaiarza's dissenting opinion laid out a pretty compelling case that the language of 1114-S, for example, tracks the language of 1114-J, where nobody disputes that multiple disabilities can be compensated, even though it says the disability against singular. But even if we were to go with just a fresh look at the statute, the fact that we are talking about one use of a disability and another use of disability or disabilities renders the language at least arguably ambiguous. And if your honors were to take another look, if it is ambiguous, we're left without Chevron deference now, because it's been abrogated, it's been overruled. And we would argue that the pro-veteran canon pushes this. But hasn't the Supreme Court really suggested that the pro-veteran canon, at least in a couple of concurring or dissenting opinions, has very little life left? It does have very little life left. Is it meant to take, if we conclude that the statute is unambiguous, then what role does the veteran's canon have? If the statute is unambiguous, then correct, the veteran's canon would not have any role. But our argument is that Judge Gaiarza suggested it's unambiguous in his dissenting opinion. Correct. But the panel majority's decision was clearly based on Chevron deference. So the panel majority of this court has determined that the language is ambiguous. That has not been overruled by Chevron. Yeah, but you know, that's the, I mean, that was the whole problem with Chevron in some instances anyways, that when we had a hard question and we looked at it and the Supreme Court started telling people to stop doing this, if it was close, we would say, eh, it's close, it's ambiguous, we'll defer because of Chevron deference. We didn't actually push ourselves very hard, and I'm not being critical of the Gaiarza panel, but we didn't push ourselves very hard to actually do the work that we now have to do to say, oh, it truly is ambiguous. It was an, I don't want to say easy, but it was a way to get at a result when it was hard to determine whether it was ambiguous to just say, well, let's just assume it's ambiguous, we defer to the agency. So the fact that that panel said it was ambiguous, I think, is equally unbinding on us, not binding on us. Sorry, yes, your honor. No, go ahead. That, again, I also want to attribute motives one way or the other on any panel decision as to ambiguity. We would argue that the language is, it uses a disability the first time, it then uses disability or disabilities, it is viewed in the context of the overall statute, there are multiple uses of the word disability without any article, and then there's 1114J which uses the disability. And so we would argue- The language in LOPER though, I mean, even if we get to your backup of the backup, isn't there, didn't the Supreme Court make clear, and this was the second biggest issue in LOPER, which is we're not second guessing or calling into question previous statutory construction opinions that deferred to the regulation. Aren't you in your backup to backup asking us to do precisely that? Well, we're asking, I mean, we're asking you to revisit the Guerra opinion under the principles of res judicata. Your honor is correct that the LOPER right made clear that it is not expressly itself overruling everything that ever relied on Chevron deference. We're simply are asking your honors under normal principles of res judicata to go back and take a look. I mean, obviously it didn't say every case is off the books, but didn't their statement of limitation also apply to instances where there's been a court ruling in terms of interpreting a certain provision? We're not calling those into question automatically based on LOPER. Correct. We're not calling it into question automatically. Agreed. And that's why we're arguing that the review here should be de novo. Your honor should take a look at the statutory language. We'd argue it's ambiguous. We'd argue that the pro-veteran canon, despite concurring opinions from the Supreme Court that have suggested that it may not have the force it once did, we would argue that your honor should take a fresh look at this under de novo review, under normal principles of res judicata. It was, you know, in conjunction with that review, we would ask your honors to look at Judge Garris' dissenting opinion in Guerra and take that into consideration. You have another backup argument about the regulation. I do, your honor. That I think turns on this language for the above purpose. What is that language doing there on your view? Because you say it doesn't cabin the idea of 4.16a to 4.16a. You want it to carry over to the SMC statute. So then what is for the above purpose doing it? Absolutely. So I think this actually calls back to a point that was made in the previous argument where somebody said that the word only does not appear in the statute. It does not say, the regulation does not say only for the above purposes. And quite frankly, I think that there's been this attempt to divide the TDIU regulation here from the SMC in a way that suggests that it's unrelated here. We're not arguing that the TDIU regulation is an interpretation of the SMC statute. Our position is, we don't think that there should be any requirement in the first place that the veteran show he has one disability. I'll grant you that it doesn't say only for the above purpose. That's true. But what difference would it make, in your view, if it didn't even say for the above purpose? Isn't your reading suggests to me that for the above purpose is doing nothing because if we just started with the rest of the sentence, then you would still use this and maybe you would use it elsewhere. Well, if for the above purpose means that when you are making a determination of the whether the veteran is entitled to a TDIU, there are different ways in which a veteran can reach a certain level. One of them involves one disability and one of them involves multiple disabilities. And that section of the regulation is hearkening back to the earlier distinction between one disability and multiple disabilities and saying for the purposes of making the TDIU determination, these are the things that are considered one disability. Now, even if we were to say it's only for that purpose, it is the Secretary's regulation that establishes that a veteran can obtain a TDIU rating based on multiple disabilities that qualify as one disability and then it lays out the ways in doing so. And then when applying for special monthly compensation based on that exact same TDIU, it's the Secretary's position that now the TDIU is actually based on multiple disabilities even though they classified them all as one disability when making the TDIU determination. That's an inconsistent position as well and we think that the Youngblood decision is simply incorrectly decided because it attributes motives to why the Secretary promulgated those regulations that are not in there. I'll reserve the bulk of my time. Thank you. Good morning and may it please the Court. Entitlement to special monthly compensation under Section 1114S requires, first and foremost, a service-connected disability rated as total. Mr. Mackey, however, does not have any one service-connected disability rated as total. Therefore, the Veterans Court correctly held that Mr. Mackey is not entitled to special monthly compensation. Mr. Mackey essentially makes two arguments in response. His first argument is that multiple disabilities should be combined into a single total rating in order to satisfy that first clause of Section 1114S. That position is not only contradicted by the express language of 1114S, which clearly says a service-connected disability in the singular, as distinguished from other portions of 1114S which talk about disability or disabilities as alternatives of each other, but it's also been rejected by this Court in Guerra, where the Court went through the statutory text and expressly held that that statutory text requires a single service-connected disability. Why do you need Guerra? I mean, we've introduced kind of another major legal debate here about Loper Bright and everything by reliance on Guerra. Does, in this case, begin and end with the statute? It does begin and end with the statute, Your Honor, but this Court has already interpreted the statute. And this panel is bound by the panel decision in Guerra. So are we bound by the fact that they thought there was some ambiguity in the statute? We can't read the statute ourselves and find no ambiguity? So I do want to clarify that point. I don't think Guerra said there is ambiguity in the statute. What the Guerra Court did is they went through the statutory text. They explained why that text refers to a single service-connected disability. And then they said at the end of this analysis, but the statutory text is not free from ambiguity and in any event, we owe deference to the Secretary's interpretation as expressed in the SMC regulation. So I don't think it's accurate to describe. That sounds like it said if, you know, we made this analysis and it did exactly what I was suggesting, and I'm not attributing any core motives to judges, I'm sure I did this myself before Loper-Bright, if they're suggesting a tagline, it may not be the clearest thing. So if it's ambiguous, we defer. I think that's exactly what the judge used. I think they— Are we bound by that? Yes, because the initial part of the analysis— I don't know why you want to make this hard argument that we're bound by Guerra and Loper-Bright didn't allow us to revisit it when you have what seems to be a pretty good plain language argument. But we're not—you're not saying we're bound by the fact that they alternatively, as a belt and suspenders matter, said even if, you know, essentially, if it's—even if there were a little ambiguity, we turn to the reg. No. Of course— We're not bound by having to turn to the reg. Absolutely correct. Judge Prost, you're not bound by that alternative holding. What I think the panel is bound by is Guerra's analysis of the statutory text. Now look, at the end of the day, I think you're right. We have a very strong argument based on the statutory text itself, and we don't need to turn to Guerra. But there's a few important things to remember here if the court is thinking about looking at this question anew. The first part is that this argument about overturning Guerra does not appear until Mr. Mackey's reply brief. It does not appear in the opening brief. It does not appear in briefing before the Veterans Court. So the argument about overturning Guerra has been forfeited. Now separately from that— We could only overturn Guerra if we were going to go en banc. And if we were going to go en banc on a result that says there's no ambiguity or we're going to rely on the regulation, then we take this case en banc. Yes. You could always take up the case en banc and overturn Guerra en banc, but you would have to go en banc to do that. But the other point I want to emphasize—and Judge Prost, I think you mentioned this in your colloquy with my friend on the other side—Loper Bright made clear that prior reliance on Chevron deference is not itself a reason to overrule cases because those cases still involve statutory stare decisis. And that's exactly what Mr. Mackey is asking the court to do here. They're asking the court to overrule Guerra for the simple reason that there is a reference to Chevron deference here. And that's simply not the way Loper Bright said it should be applied. Here's what I struggle with, and I know it's not really an issue in this case. Why, if it requires a single service-connected disability rated as total, can they get it for TDIU at all? Right. So that goes back— It sounds like, frankly, that that's reading this statute that's not consistent with the plain language, that if they have a 60 percent rating of a disability, even if it guarantees them TDIU, it's not a disability rated as total. It's a disability that entitles them to total compensation because of unemployability. Now, I know you're not asking us to overturn that, and we wouldn't overturn that. I suppose if you want to be more generous than the statute allows, you can. But it does seem to me that if we're looking at this in terms of the purpose of SMC, that there's very little practical difference between one disability that gets you TDIU and two disabilities that get you TDIU. The veteran is so seriously disabled because of that, that he or she cannot work. So the difference, Judge Hughes, is that one satisfies the SMC statute and the other does not. Well, that's—but I'm not sure it does. That's my point. I think the first one—I think neither of them do. And so if one of them does, then why doesn't both of them? So here's why we don't disagree with the Veterans Court's decision in Bradley, which is where this line really comes from. What the Veterans Court said in Bradley is that TDIU can satisfy the rated as total part of the first clause of 1114S. Even if you have a disability that's not itself rated 100% under the scheduler rating, TDIU gives it the rated as total part necessary for 1114S. And we don't disagree with that. But what's important under the SMC statute is that rated as total still has to be corresponding to a service-connected disability. So your reading of this is service-connected disability can get to a total rating either through the schedule or through TDIU. Exactly. That's what we think. It still has to be—the predicate for that is one disability. And then there's two passed to get to 100%. That's exactly right. It still has to be a service-connected disability. Because, Judge Hughes, as you correctly pointed out— It seems like that if Congress intended that, then it doesn't really make any sense in the way this SMC statute works in terms of trying to give extra benefits for people who are severely disabled to distinguish between those two things. But if that's what the language does, that's what the language does. Right. And unfortunately, we can't disagree with what the language of the statute says. That's a congressional decision. It's a congressional intent. And if Congress wants to revisit that and change— I mean, is there any practical difference for purposes of the SMC stuff that a person is totally—gets TDIU from one disability versus two? They still have the same degree of impairment and inability to work, which all of this is based on. And so if they have TDIU from two disabilities and then have another 60% disability, it doesn't sound to me like they're any different situation, practically speaking, than the person that has one disability that's TDIU and has another at 60. So there might be a practical distinction there in the sense that TDIU allows veterans to combine a number of disabilities for this total rating based on individual unemployability, whereas the SMC statute requires a single disability that's totally rated, again, whether through TDIU or 100% schedule rating. But to me, if you're going to allow TDIU, it makes little sense. And this is a theoretical discussion because clearly the statute says what it says. But it just doesn't seem very logical in the way TDIU predicts a person's inability to work to make a difference between one disability or two. And I think it's logical because of the a service-connected disability requirement. It has to be one disability. That's what Congress wrote into the statute. Can you help me then on the gray brief, page 17, footnote 3, Mr. Mackey's counsel sets out a scenario where comparing a veteran who has a single 60% disability rating that qualifies for TDIU, that person under your reading is eligible for SMC potentially, as I understand it. But if that compared with a veteran who has a 60% plus a 10%, that person is not eligible for SMC. Is that your position? No. No, that footnote is wrong. And all you have to do to see that it's wrong is to refer back to the Bradley decision from the Veterans Court and the Bowie decision from the Veterans Court. In both of those cases, you had veterans with multiple disabilities that together combined for a rating of TDIU. And what the Veterans Court said in both cases is that the veteran is not entitled to SMC because the TDIU is a product of multiple combined disabilities. But at the same time, the Veterans Court then remanded the case back to the RO for a determination whether any one of those disabilities could have itself been the reason for the veteran to obtain TDIU. So in this situation, in this hypothetical that's provided in footnote 3, if you have a veteran with a 60% rating and a 10% rating and a TDIU that combines the two, what would happen is what happened in Bradley and Bowie, where the Veterans Court would remand the matter back to the RO for a determination whether the 60% disability was itself sufficient for TDIU. And that's mandated by the pro-veteran canon, I think those courts say? Or that would be one question, but the other question is, is that something the government's asking us to endorse in this case? No. There's no applicability here for the pro-veteran canon because the statutory language is clear. And this court has said time and again that when there is no ambiguity, the veterans canon does not. And I asked three different confusing questions. My apologies. This scenario, if I'm concerned about the scenario in the footnote, which you've now explained to me, I think it's a good explanation for why in real life this is not a problem. Has the federal circuit ever weighed in on why this kind of scenario can't really happen? It's not a problem? Or is that just the Veterans Court authority? It's Veterans Court authority. This court has never reviewed SMC in the context of TDIU ratings. So is the issue raised in this footnote, is it presented in this case such that we should reach it? Do you have a view on that? Yes, I do have a view. It is not presented in this case. The reason it's not presented in this case is because in the board decision reviewing Mr. Mackey's claim, the board made clear that the only single disability that was rated high enough to possibly give him TDIU on that basis alone is not sufficient for TDIU. And if I can... I think I've seen that. It would be a fact issue that we couldn't reach anyway. It would be a fact issue anyway, but I'll just provide the citation for the court. At page 20 of the joint appendix, there is a paragraph that ends at the top of the page and the concluding sentence of that paragraph reads, there is no indication that the veteran's bowel incontinence alone precludes him from employment. That is a holding that bowel incontinence, and that's the highest rated disability that Mr. Mackey had. It's the only one that reached the 60% threshold. That 60% is what could be used for SMC if he had another disability rated as total, right? That 60% could potentially be the sole reason for TDIU. No, no, no, no. I understand that they said it wasn't TDIU.  But for one of the special monthly compensations, you have to have a total disability and then another rated at, is it 60 or 4? 60. That's correct. So that could qualify as the other at 60, but he doesn't have the predicate of a single disability rated under TDIU or schedule. So in this case, because we know the veterans keep going back and getting new ratings and if one of these other ratings suddenly gets elevated to be sufficient for TDIU, then we could see this as a new material evidence claim and that 60% rating for bowel incontinence in combination with a single TDIU rating might entitle him to it sometime in the future. It could potentially in another case. In this case, of course, it's not possible because no single disability could entitle Mr. Mackey separately to TDIU. And so you don't get to that second part of the analysis. So he just needs to go find a disability that's either a schedule or 100% or a single TDIU that's rated at total. It's unfortunate, but his disabilities simply do not qualify for SMC. I have a question that's neither here nor there. I'm just curious, which is the statutory language itself includes an express dollar amount. And I can't recall seeing that in statutes, largely because of inflation and other things. Is this amount the only amount? Has this amount been sort of in place for years and years and years, the same amount, or does it vary? So this amount has been in place for some time, but it didn't start with that amount. Congress keeps increasing the amount in the SMC statute. It's very unusual. Yes, I think the starting amount was in the tens of dollars, and then slowly it increased to the amount. Well, all the schedules, I mean, every single one has a dollar. We don't see these often because once you get it, it's automatic. But if you have 10%, you get this amount of money. If you get 20, you get this amount of money, because it's all built up on impact to earnings capacity. And I don't understand the formula for that amount. The reason this is gone is because it's a whole chain of building up from you get very little if you're 10%, up to if you get the entirety of the special monthly compensation, you get a lot. That's correct. All the amounts in Section 1114 from A, which is 10%, to J, which is total disability, they've all changed over the years. The regulation, just briefly, for the above purpose, is it your position asking us to read that as only for the above purpose? Right. We're simply asking the court to give credit to what the Secretary said in the regulation. And what the Secretary said is the TDAU regulation, the one disability clause in Section 416A, is for the specific purpose of distinguishing between schedulers- For schedulers? Save for the specific purpose. That's what I'm struggling with, is for you to win, don't I need to read in for the specific purpose, for the limited purpose, or only for this purpose? Otherwise, why wouldn't, as a matter of common sense, treating the multiple disabilities as a single disability, as one disability, why wouldn't it carry over to the SMC statute? So two answers, Your Honor. First, just looking at the language of the regulation, it says for the above purpose. It doesn't say for a purpose. It says for the above purpose. The definite Article V, which indicates, as the Veterans Court correctly held in Youngblood, that there is only one purpose, and that purpose is distinguishing between scheduler and extra scheduler TDAU. There's nothing in that regulation that suggests it relates in any way to SMC. There's nothing in the process of implementing this regulation that suggests in any way that it relates to SMC. It's a regulation about TDAU. My second response to you, though, Your Honor, is that what this regulation does is allow Veterans to combine certain disabilities for a particular purpose. That may be appropriate for TDAU, which is itself a creature of regulation, but the SMC statute does not permit Veterans to combine disabilities for the purpose of establishing SMC. The statute says a service-connected regulation, and because it says a service-connected regulation, it doesn't matter what combination a regulation allows Veterans to make. The statutory language controls. Thank you. Thank you. Thank you. I'll give you a total of three minutes rebuttal if you need it. Thank you, Your Honor. I'd like to make three points in rebuttal. The first is, to Judge Hughes' point, I think Your Honor is correct. There has not been any policy rationale justifying why two similarly situated Veterans, both have a TDAU, both are unable to work, one should qualify or be able to qualify for SMC, and the other should not, which relates to the hypothetical on page 17 of our reply brief. I think even if the Court remands back to the Board for a determination of whether or not the reshuffling could result in a TDAU, and the Board determines that it can't, you could still have a Veteran who has 60 plus 10, or, by the way, 50 plus 40, and is way more disabled, but simply unable to qualify because he's got more than one in a TDAU. There's no reason why, there's no basis for, Congress never expressed an intent to distinguish between Veterans this way. Well, except for the language of the statute, it seems to be most plainly read as in favor of a single disability, and allowing the TDAU is, you know, with one disability kind of makes sense, but isn't necessarily plainly included. So it seems like they've gone part of the way by being generous, and if Congress wants to go the rest of the way, then they should change the statute. We would argue that the footnote on our reply, 17, is borderline absurd, and Congress would never have intended that result. Well, yeah, but in press, I think Congress would, I would read this as Congress not intending TDIU at all, rather than the other way. And we would suggest that that renders the Secretary's position sort of incoherent. Just to address the regulation, Your Honor, I think even if Your Honors hold that it only applies for the above purposes, we are not the party who's arguing that the Veterans should ever have to show one disability at all. That's the Governor's position, and Your Honors seem to believe that it's based on the plain language of the statute. But they've characterized under the Secretary's authority to promulgate regulations for applying the law, they've characterized multiple disabilities as one disability for determining a TDIU, and then they say that if you have a TDIU based on what we call one disability, you still can't qualify for SMC. That's moving the goalposts, Your Honor. We'd ask that the Court reverse the interpretation of the statute and the regulation and remand for further proceedings. We thank both sides. Thank you.